**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Willie Harper,

                    Petitioner,      Case No. 14-cv-13699

v.                           Judith E. Levy
                                      United States District Judge

Carmen Palmer,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS [7], CERTIFICATE OF APPEALABILITY,
AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

     Willie Harper ("Petitioner"), confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, has filed an amended *pro se* petition for

a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Dkt. 7.) In his

application, Petitioner challenges his conviction of three counts of assault

with intent to murder, MICH. COMP. LAWS § 750.83[1]; carrying a concealed

weapon, MICH. COMP. LAWS § 750.227; felon in possession of a firearm,

MICH. COMP. LAWS § 750.224f; and possession of a firearm during the

---

[1] The judgment of sentence incorrectly reflects that defendant was convicted of
assault with intent to do great bodily harm less than murder.

commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a second-offense habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 25 to 50 years for each count of assault with intent to murder, 40 to 60 months for carrying a concealed weapon and felon in possession, and a consecutive term of two years for felony-firearm.

For the reasons stated below, the Court denies the petition for a writ of habeas corpus. The Court further denies a certificate of appealability and leave to appeal *in forma pauperis*.

## I.    Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

In Docket No. 308639, defendant appeals as of right his convictions resulting from his shooting at three individuals at an apartment complex in Detroit, Michigan. Michael Clemons and Kevin Miller were with Steven Tee standing behind a gate and near a brick wall near the front of the apartment complex. Clemons and Miller saw a truck drive by with the passenger side facing the complex. Clemons identified defendant as driving the vehicle. The car briefly stopped, and defendant looked over at the three men. Defendant then continued down the road, made a u-turn over the sidewalk, drove back toward the apartment building, and stopped in front of the gate with the driver's side facing the complex.

Defendant then extended a semi-automatic gun out of the window. Clemons testified that defendant said, "[Y]aw thought I was playing and I told you I will be right back." Miller never saw the shooter's face, but testified that the shooter pulled out a gun and said, "I told you I would be back." Clemons saw defendant point the gun at him, Tee, and Miller, and start shooting through the gate. Miller dropped to the ground while Tee and Clemons ran. Clemons and Miller heard the bullets hitting the concrete and bricks of the building. When running, Clemons looked back to see where defendant was located. Defendant then looked directly at Clemons, shot two more times, and hit Clemons in the forehead with one of the bullets. Brandon Bunch, a resident of the apartment complex, testified and confirmed that Clemons had been shot in the head and had a slight wound. Bunch also testified that before defendant drove away from the scene, he said "I'll be back."

Two police officers noticed defendant driving at a high rate of speed and disregard a stop sign. They pursued him and saw

that he threw an assault weapon out of the window. Defendant continued to flee from the police but when he attempted to turn left, he was unsuccessful, and his car struck a fence. Defendant ran out of the car and began fleeing on foot. He was eventually subdued and arrested, and the gun he threw out of the window was recovered. In a written statement to the police, defendant admitted that he was at the apartment complex because he had been robbed by four males two days before the shooting, but he claimed that he only shot the gun in the air and ran from the police because he had the gun. Clemons and Miller testified that they never saw defendant point his gun and fire it in the air. Clemons later went to the hospital and received staples and stitches for the bullet wound.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In Docket No. 309330, defendant appeals by leave granted his plea of no contest to felonious assault and felony-firearm relating to his behavior in pursuing a female victim with a gun. The trial court ordered defendant to pay $68 in state costs per conviction, $130 for the crime victim's rights fee, $600 in court costs, and $400 in attorney fees. Defendant now appeals in both dockets on several grounds.[2]

*People v. Harper*, Nos. 308639, 309330; 2013 WL 4766677, at \*1–2 (Mich. Ct. App. Sept. 5, 2013), *vacated in part on other grounds by* 497 Mich. 885 (2014).

---

[2] The facts underlying this conviction were not discussed by the Michigan Court of Appeals, as they were not relevant to the issues on appeal.

Petitioner's conviction was affirmed in part and vacated in part on appeal. *Id.* The Michigan Supreme Court denied leave to appeal in Docket No. 308639, and ordered the court of appeals to hold in abeyance Docket No. 309330 pending decisions in two other cases. *People v. Harper,* 495 Mich. 947 (2014). After those two court of appeals decisions were issued, the Michigan Supreme Court vacated the part of the court of appeals opinion addressing court costs and remanded for reconsideration of this issue, but denied leave to appeal all other aspects of Petitioner's application. *People v. Harper*, 497 Mich. 885 (2014).

Petitioner now seeks a writ of habeas corpus on the following grounds:

> I. The Michigan courts unreasonably applied federal law in finding that there was no violation of Petitioner's right to effective counsel as guaranteed by the Sixth Amendment, where trial counsel failed to object to the absence of Dr. Janowicz and Steve Tee, failed to obtain an expert witness, failed to object to the admission of medical records where the author of said records did not testify, failed to object to perjured testimony and other instances of prosecutorial misconduct and failed to investigate.

> II. The state court unreasonably applied federal law in concluding that there was sufficient evidence to support Petitioner's convictions for assault with intent to commit

great bodily harlm [*sic*]. Therefore, petitioner is entitled to issuance of the writ of habeas corpus.

III. The state courts unreasonably applied federal law in denying Petitioner a new trial where the prosecutor transgressed the bounds of professional conduct by denigrating defense witnesses which denied Petitioner a fair trial.

IV. Petitioner is entitled to habeas relief where the trial judge erroneously scored him 50 points under offense variable 6, over defense objection, which caused Petitioner to be sentenced based on inaccurate information and to a longer minimum term allowed by law.

(Dkt. 7 at 9.)

## II.   Legal Standard

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). And "even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported [] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

Thus, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* ___ U.S. ___, 136 S. Ct. 1149, 1152 (2016).

## III. Analysis

Petitioner raises four separate claims.  First, he argues the state courts unreasonably applied federal law in rejecting his ineffective

assistance of counsel claims. Second, he argues the state courts unreasonably applied federal law in concluding there was sufficient evidence to convict him of assault with intent to commit murder. Third, he argues the state courts unreasonably applied federal law in denying him a new trial despite what Petitioner describes as prosecutorial misconduct. Finally, Petitioner argues the trial judge incorrectly scored his offense level, causing him to serve a longer sentence than was permissible.

## A. Ineffective Assistance of Counsel Claim

Petitioner first contends that the state courts unreasonably applied federal law in finding no Sixth Amendment violation because his trial counsel was ineffective in (1) failing to object to the introduction of medical records prepared by Dr. Janowitz, who did not testify at trial; (2) failing to ensure the prosecutor produced Steven Tee as a witness at trial; (3) failing to obtain an expert witness; (4) failing to object to perjured testimony from Kevin Miller; (5) failing to object to prosecutorial misconduct; and (6) failing to investigate and adequately prepare for trial. (Dkt. 7 at 34–48.)

Respondent argues that Petitioner has procedurally defaulted part of this claim because he failed to properly raise the issue before the Michigan Court of Appeals. (Dkt. 8 at 28.) Specifically, Respondent argues Petitioner is procedurally defaulted from raising two parts of this claim: (1) that counsel was ineffective for failing to object to Mr. Tee's absence at trial, and (2) that counsel was ineffective for failing to object to the admission of the medical records. (*Id*.) These two arguments, Respondent argues, were not supported in Petitioner's brief to the Michigan Court of Appeals "with citations to the record and to relevant legal authority," which is "tantamount to abandoning [them.]" (*Id*.)

While failing to raise claims on direct appeal can result in procedural default, the Court declines to find these two claims defaulted. The Michigan Court of Appeals stated that "defendant fails to explain or cite any authority" to support his arguments, 2013 WL 4766677 at *7, but they do not expressly say that he did so little as to "simply [] announce a position . . . and then leave it up to [the] Court to discover and rationalize the basis for his claims." *People v. Kevorkian*, 248 Mich. App. 373, 389 (2001) (quoting *Mitcham v. Detroit*, 355 Mich. 182 (1959)). And Respondent has not supplied the briefs submitted to the court of appeals,

so this Court is unable to determine whether Petitioner truly failed to provide *any* support for his claims. Accordingly, these two claims are not defaulted, and the Court will consider all of Petitioner's arguments on the merits.

To show that he was denied the effective assistance of counsel, a defendant must satisfy a two-prong test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Second, the petitioner must demonstrate prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood

of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).

And on habeas review of state court determinations, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, pursuant to 28 U.S.C. § 2254(d)(1), "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner, *id*., and "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.

> The question is whether there is any reasonable argument
> that counsel satisfied Strickland's deferential standard.

*Harrington*, 562 U.S. at 105.  Thus, a reviewing court must "affirmatively

entertain the range of possible 'reasons [counsel] may have had for

proceeding'" as he did.  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011).

### Failure to Object to Absence of Dr. Janowicz & Admission of Medical Records

Petitioner first argues that the state courts erred in holding that

trial counsel's failure to object to the absence of Dr. Janowicz and to the

admission of medical records he prepared did not violate his Sixth

Amendment rights.  He argues that Dr. Janowicz's absence and

admission of the records he prepared violated the Confrontation Clause,

and counsel was clearly ineffective in failing to object to both of these

alleged constitutional violations.  (Dkt. 7 at 34–40.)

The Confrontation Clause "bars the admission of testimonial

statements of a witness who did not appear at trial unless he was

unavailable to testify, and the defendant had had a prior opportunity for

cross-examination."  *United States v. Arnold*, 486 F.3d 177, 187 (6th Cir.

2007) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).  The

scope of this clause is limited to testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 823–24 (2006).

Petitioner first argues that trial counsel was ineffective by failing to object to the admission of the medical records, claiming a violation of the Confrontation Clause.[1]  But the medical records prepared by Dr. Janowicz, the physician and radiologist who treated Steven Tee after the incident that gave rise to Petitioner's convictions, (see Dkt. 8 at 10–11), are nontestimonial.  The victim, Mr. Clemons, was seeking treatment for the injuries sustained in the incident that resulted in Petitioner's conviction, and the records created were done so to provide a diagnosis and course of treatment, not in preparation for litigation or to be provided to law enforcement.  And nothing in the record suggests Dr. Janowicz anticipated the records being used in litigation at the time they were made.  These records are, therefore, nontestimonial, and do not implicate the Confrontation Clause.  *See United States v. Garner*, 148 F. App'x 269,

---

[1] Petitioner did not raise this issue in the state courts.  There, he argued only that admission of the records violated *Brady v. Maryland*, 373 U.S. 83 (1963).  *Harper*, 2013 WL 4766677, at *7.  Respondent has not argued the claim is defaulted, and the Sixth Circuit has counseled that courts "should not embrace *sua sponte* raising of procedural default issues as a matter of course." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (internal citation and quotations omitted).  Accordingly, the Court will review the claim on the merits.

274 (6th Cir. 2005) (introduction of medical records prepared by physicians who did not testify at trial did not violate Confrontation Clause because records were prepared to obtain disability benefits); *see also Moses v. Payne,* 555 F.3d 742, 755 (9th Cir. 2009) (statements made to emergency room physician were nontestimonial); *United States v. Santos,* 589 F.3d 759, 763 (5th Cir. 2009) (same); *United States v. Peneaux,* 432 F.3d 882, 896 (8th Cir. 2005) (statements made to a physician seeking to give medical aid in the form of diagnosis or treatment are presumptively non-testimonial).

Petitioner relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009), to support his argument. But this case only highlights the nontestimonial nature of Dr. Janowicz's records. In *Melendez-Diaz*, the Court held that affidavits prepared for trial by forensic analysts at a state-run lab were testimonial. 557 U.S. at 311. This is wholly unlike medical records prepared by a treating physician for the purpose of properly diagnosing and treating a patient.

Because the admission of the medical records did not violate the Confrontation Clause, counsel was not objectively deficient and therefore

not ineffective for failing to object to their admission on this basis. *United States v. Johnson,* 581 F.3d 320, 328 (6th Cir. 2009).

Further, because the medical records were nontestimonial, no testimonial hearsay was elicited from Dr. Janowicz, and the Confrontation Clause does not apply to him. Accordingly, even though there was no stipulation or waiver of his presence, Dr. Janowicz was not required at trial under the Confrontation Clause.[2]

Because there is no Confrontation Clause violation with respect to the absence of Dr. Janowicz, counsel was not ineffective for failing to object to his absence. Further, as the Michigan Court of Appeals held: "there is no evidence to suggest that the radiologist would have testified favorably for defendant." *Harper,* 2013 WL 4766677, at *7. Accordingly, the Michigan Court of Appeals reasonably concluded that Petitioner "has not demonstrated that his counsel behaved objectively unreasonably or that the result of the trial would have been different." *Harper*, 2013 WL 4766677, at *7. Petitioner is not entitled to relief on this claim.

---

[2] To the extent that Petitioner argues the prosecutor was required to present Dr. Janowicz, at most, this argument is governed by state law. Violations of state law and procedure which do not infringe on specific federal constitutional protections are not cognizable claims under section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

### *Failure to Disclose Medical Records*

As part of his argument that trial counsel was ineffective for failing to object to admission of medical records, Petitioner also claims that the medical records were not turned over to the defense early enough to prepare for trial, allegedly in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Dkt. 7 at 44.)

Failure to disclose information may give rise to a cognizable claim if the information was material under *Brady*, and "there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994). Materiality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial. *United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976). And where, as here, the issue is not a complete failure to disclose, but is instead delay, such "[d]elay only violates *Brady* when the delay itself causes prejudice." 28 F.3d at 561 (quoting *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992), *vacated and remanded on other grounds*, 507 U.S. 956 (1993)). Whether delay causes prejudice "is really just a type of inquiry into materiality"; thus, "a defendant must show what he would have done differently had

he been given more time . . . and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would have been different." *United States v. Spry*, 238 F. App'x 142, 147–48 (6th Cir. 2007).

In this case, Petitioner has failed to offer any evidence or argument to show that any of the medical records contained exculpatory material. Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (internal citation omitted). Moreover, Petitioner is unable to show that he was prejudiced by the allegedly late disclosure of the medical records because he failed to present what he or counsel would have done differently had the medical records been disclosed at an earlier point in time. Thus, he has not demonstrated that there is a reasonable probability the outcome of the trial would have been different had the records been disclosed sooner.

For these reasons, the Michigan Court of Appeals reasonably applied federal law in finding "[t]here is no basis to conclude that a *Brady* violation occurred or that defense counsel was ineffective for

failing to raise this issue below." *Harper*, 2013 WL 4766677, at *7. Accordingly, Petitioner is not entitled to relief on this claim.

### *Failure to Object to Absence of Steven Tee*

As with Dr. Janowicz, Petitioner claims that trial counsel was ineffective for failing to object to the absence of Steven Tee because he had a right to confront the victim of the crime of which he was accused. But the right to confrontation extends only to individuals who provide testimonial statements, whether in or out of court, against a defendant. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004). And Petitioner himself admits that "Mr. Tee did not testify and no out of court statements made by Mr. Tee was [*sic*] admitted into evidence." (Dkt. 7 at 41.) Thus, the Confrontation Clause was not violated, and counsel cannot be held constitutionally deficient for failing to raise this claim. Accordingly, the state courts reasonably applied federal law in finding that Petitioner "failed to establish that he was denied the effective assistance of counsel." *Harper*, 2013 WL 4766677, at *7. Petitioner is not entitled to relief on this claim.

### *Failure to Obtain Expert Witness*

Petitioner next argues that trial counsel was ineffective by failing to obtain an expert witness to rebut Clemons' injuries, arguing an expert would testify that the injuries were not caused by Petitioner's gun. (Dkt. 7 at 42–43.)[3]

An ineffective assistance of counsel claim based on failure to call an expert witness cannot be based on speculation. *Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Here, Petitioner has offered no evidence to show there was or is an expert who would have impeached the victim's testimony concerning the nature or source of his injuries. Thus, Petitioner cannot show counsel's performance was unreasonable nor can he show prejudice. Accordingly, Petitioner is not entitled to a writ of habeas corpus on this claim.

### *Failure to Object to Perjured Testimony*

Petitioner claims that the state courts unreasonably concluded that trial counsel was not ineffective by failing to object to perjured testimony given by Kevin Miller. (Dkt. 7 at 44–45.) Citing to the trial transcript

---

[3] It does not appear that Petitioner raised this claim in the state courts. But the Court will consider the claim on the merits for the same reasons set forth in footnote 2.

from March 15, 2013, he argues that Mr. Miller testified at the preliminary examination that Petitioner did not aim the gun at anyone, but Miller changed his testimony at trial, and his attorney was ineffective for failing to object to this instance of perjury. (Dkt. 7 at 45 (citing Tr. at 76:7-25).)

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). The same is true even if a prosecutor "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To prevail on "a claim of prosecutorial misconduct or denial of due process, the defendant must show that the statement in question was actually false, that the statement was material, and that the prosecutor knew it was false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). Further, the statement in question must be "indisputably false," not just misleading. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story does not establish perjury. *Drain v. Woods*, 902 F. Supp. 2d 1006, 1030 (E.D. Mich. 2012) (citing *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993)).

Here, despite Petitioner's allegation that Mr. Miller changed his story, the record reflects that his trial testimony was consistent with the preliminary examination testimony. During the preliminary examination, Mr. Miller testified that Petitioner "point[ed] the gun '[s]traight, straight out the window.'" *Harper*, 2013 WL 4766677, at *8. And at trial, he testified that Petitioner pointed a gun out of a car window, without aiming at anyone, when the initial shots were fired. (Tr. (Mar. 15, 2013) at 76–77).

Because there were no inconsistencies in Mr. Miller's testimony, Petitioner lacks any evidence to suggest the trial testimony was false and that the prosecutor knew it to be false. Thus, there was no perjury to object to, and the Michigan Court of Appeals reasonably determined that Petitioner "failed to demonstrate that his counsel behaved objectively

unreasonably or that any perceived error prejudiced him." *Harper,* 2013 WL 4766677, at *8. *Brown v. Burt*, 65 F. App'x 939, 942 (6th Cir. 2003).

### Failure to Object to Prosecutorial Misconduct

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's inappropriate attacks on the credibility of the defense witnesses, which Petitioner raises as a separate claim of prosecutorial misconduct below. (Dkt. 7 at 45–46.)[4]

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the outcome of the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001).

Prosecutors may not "comment on the credibility of a witness" to a jury, *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005), but may suggest to a jury that a witness is not credible provided this is "coupled with a

---

[4] Again, it does not appear Petitioner raised this claim in the state courts. The Court will nonetheless review it on the merits for the reasons set forth in footnote 2.

detailed analysis of the record." *Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008).

As set forth below, the state courts found that the prosecutor's comments did not constitute misconduct because they were drawn from the facts and evidence presented at trial. Further, the "prosecutor did not imply that she had some type of special knowledge regarding the witnesses' credibility." *Harper*, 2013 WL 4766677, at *10. For example, the prosecutor stated certain witnesses should not be believed because they were not present during the shooting. *Id*. The prosecutor was not presenting a personal view, but comments, viewed in context, that were "coupled with a detailed analysis of the record." *Cristini*, 526 F.3d at 902. In sum, there was no prosecutorial misconduct to object to, and counsel was not ineffective for failing to object during the closing. *Id*. Accordingly, Petitioner is not entitled to habeas relief on the basis of this claim.

### Failure to Investigate

Petitioner alleges that trial counsel failed to investigate Steven Tee and did not adequately defend against the claim that Petitioner attempted to murder him. Specifically, Petitioner argues that "Trial

counsel neglected to investigate evidence that the alleged complainant Michael Clemons was the uncle of an individual nick-named 'Mook.' This 'Mook' Character was mentioned in police reports taken at the scene and identified as one of the men that previously robbed the Petitioner." (Dkt. 7 at 48.) Petitioner claims that an investigation would have uncovered information used to impeach Mr. Clemons' testimony about receiving staples in his head, and "would have informed the jury of Clemons' potential motive to testify falsely." (*Id.*)[5]

"A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003) (quoting *Strickland*, 466 U.S. at 690–91). And "[i]n assessing prejudice, [a court] reweigh[s] the evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 539 U.S. at 534.

Here, assuming that defense counsel acted unreasonably in failing to investigate 'Mook,' Petitioner cannot demonstrate prejudice from this decision. First, even if 'Mook' had been found, Petitioner provides no

---

[5] Petitioner does not appear to have raised this claim in the state courts. Again, the Court will review the claim on the merits for the reasons set forth in footnote 2.

evidence to suggest he would have contradicted Mr. Clemons' testimony with respect to the medical treatment received or corroborated the claim that he previously robbed Petitioner. And, as set forth above, an ineffective assistance of counsel claim for failure to produce a witness cannot be based on speculation about what the witness would say.

Further, Mr. Clemons was not the only witness who testified about the extent of his injuries or Petitioner's conduct. Brandon Bunch and Lana Rice, residents of the apartment complex, testified that Mr. Clemons was struck in the forehead. Mr. Bunch also testified that Petitioner said, "I'll be back," before driving away. Shavonte Rice and Kevin Miller also testified that they never saw Petitioner aim the gun at anyone. Given that defense counsel put on a number of witnesses in addition to Mr. Clemons, and who offered both inculpating and exculpating testimony, Petitioner has not shown a reasonable probability that the outcome of the trial would have been different if 'Mook' had testified, and he is not entitled to relief on this claim.[6] *See English v. Romanowski*, 602 F.3d 714, 729 (6th Cir. 2010) (finding prejudice but

---

[6] *See also* analysis of the sufficiency of the evidence claim below.

only after counsel said that had he learned about a witness' problems before trial, he would not have presented key witness at trial).

## B. Sufficiency of the Evidence Claim

Petitioner alleges that the state courts unreasonably applied federal law in concluding there was sufficient evidence to support his conviction for assault with intent to commit murder. (Dkt. 7 at 48–51.)

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). But "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but must ask itself "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). In other words, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson,* 566 U.S. 650, 656 (2012).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 305 (1998)).

The intent to kill element does not equate with murder. *Warren,* 161 F.3d at 361 (citing *People v. Taylor*, 422 Mich. 554 (1985)). But "[a] specific intent to kill is the only form of malice that supports a conviction of assault with intent to commit murder." *Johnigan v. Elo*, 207 F. Supp. 2d. 599, 608 (E.D. Mich. 2002) (citing *Maher v. People*, 10 Mich. 212, 216–

17 (1862)). "A finding that defendant had formed the specific intent to kill when he pointed his weapon at the victim is sufficient to support a conviction of assault with intent to commit murder." *Id.* (citing *People v. Bailey*, 451 Mich. 657, 667, 669 (1996); *People v. Gjidoda*, 140 Mich. App. 294, 297 (1985)).

In determining intent, the trier of fact "may, and should take into consideration the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Taylor*, 422 Mich. at 568 *(*quoting *Roberts v. People*, 19 Mich. 401, 415–16 (1870); *Maher v. People*, 10 Mich. 212, 217–18 (1862)).

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim as follows:

> Moreover, a review of the evidence demonstrates that there was sufficient evidence to support defendant's conviction. Defendant drove to the apartment complex with a gun because he had been robbed at that location a couple days prior. He drove by the three victims, paused, and looked in

their direction. He then made a u-turn and drove on the sidewalk until he was near the victims. He stated, "yaw thought I was playing and I told you I will be right back." He then fired multiple shots in the victims' direction, hitting one of them in the forehead. Clemons testified that before defendant shot him in the forehead, defendant looked directly at him and deliberately fired two more shots.

Thus, there was sufficient evidence that defendant committed an assault, he had the intent to kill, and the killing would have been a murder. While there was conflicting evidence about whether defendant shot the bullets up in the air, all conflicts in the evidence are resolved in favor of the prosecution and we will not second-guess the jury's determinations regarding the weight or credibility of the evidence. Therefore, we find that defendant's convictions were supported by legally sufficient evidence.

*Harper*, 2013 WL 4766677, at *9–10 (internal citations omitted).

It is clear that there was sufficient evidence for a rational trier of fact to conclude that Petitioner specifically intended to kill the three victims. At most, Petitioner points out conflicting testimony, but a federal habeas court has "no license to redetermine the credibility of the witnesses whose demeanor was observed at trial." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992) (citing

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Accordingly, Petitioner is not entitled to relief on this claim.  *See Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005).

### C. Prosecutorial Misconduct

Petitioner alleges that the prosecutor improperly commented on the credibility of several defense witnesses during closing arguments, and the state courts erred in finding he was not entitled to a new trial based on this alleged misconduct.  (Dkt. 7-1 at 1–3.)  Petitioner specifically argues it was improper for the prosecutor to tell the jury "not to believe none [*sic*] of the defense witnesses," or "had some other motive to testify and take photos than that of good faith."  (*Id*. at 2.)  Respondent argues Petitioner procedurally defaulted this claim by failing to object to it at trial, and the Michigan Court of Appeals' review of the claim for plain error constitutes default.  (Dkt. 8 at 47.)

Petitioner argues any procedural default should be excused because the claim "was not rejected on an independent and adequate state procedural rule."  (Dkt. 11 at 1.)

The Michigan Court of Appeals addressed Petitioner's allegations of prosecutorial misconduct as follows:

Lastly, in defendant's Standard 4 brief in Docket No. 308639, he contends that there was prosecutorial misconduct. An unpreserved claim is reviewed only for plain error affecting substantial rights. *People v. Carines*, 460 Mich. 750, 763–764; 597 NW2d 130 (1999). An error must have occurred, it must be plain, and it must have affected the outcome of the proceedings. *Id.*

B. Analysis

Defendant first attacks the prosecution's statements in closing argument that the jury should not believe the defense witnesses. However, the prosecution specifically stated that the jury should not believe these witnesses because there was no evidence that they were even present at the shooting. A prosecutor is allowed to present "arguments from the facts and testimony that the witnesses at issue were credible or worthy of belief." *People v. Dobek*, 274 Mich.App 58, 66; 732 NW2d 546 (2007). The prosecutor did not imply that she had some type of special knowledge regarding the witnesses' credibility. *Id.*

Moreover, while the prosecution did comment on a defense witness's credibility regarding the pictures she took at the apartment building, this again was an argument derived from the evidence. The prosecution noted that this witness did not see shots being fired and the pictures were not taken at the time of the crime, so this witness lacked credibility and her testimony should be given little weight. Because these comments were arguments based on the evidence at trial, they were proper. *Dobek*, 274 Mich.App at 66.

> Finally, the jury was specifically instructed that the prosecution's statements were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 256 Mich.App 265, 279; 662 NW2d 836 (2003). Defendant has not established any plain error requiring reversal.

*Harper*, 2013 WL 4766677, at *10.

"Michigan has a contemporaneous objection rule," and this rule "constitutes an adequate and independent state ground for foreclosing habeas review." *Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011). If an appellate court nonetheless reviews the claim on direct appeal, it is done under the plain error standard, and is considered "the enforcement of a procedural default" rather than a ruling on the merits. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

Here, it is clear that the Michigan Court of Appeals was enforcing the contemporaneous objection rule, as evidenced by the court's statement that the claim was "unpreserved" and would be reviewed for plain error. Thus, the court of appeals' decision rested on an adequate and independent state ground, and Petitioner's claim is procedurally defaulted.

## D. Sentencing Guidelines Claim

Petitioner's final claim is that the trial court erred in scoring Offense Variable 6 at 50 points, arguing the reliance on judge-found facts violated his Sixth Amendment rights pursuant to *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151 (2013), and the court miscalculated under state law.

First, Petitioner argues that the trial judge violated his Sixth Amendment right to a jury trial by using facts that should have been, but were not, submitted to a jury to score the offense variables and calculate a sentencing guidelines range.

The "essential Sixth Amendment inquiry is whether a fact is an element of the crime." *Alleyne*, 133 S. Ct. at 2162. And a fact that is an element must be submitted to a jury and proven beyond a reasonable doubt if it alters the prescribed statutory maximum. *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This same rule applies to facts that increase statutorily-prescribed minimums. *Alleyne*, 133 S. Ct. at 2155.

Contrary to Petitioner's claim, *Alleyne* does not apply to his case because the trial court did not use judge-found facts to increase either a

mandatory minimum or maximum. And neither *Apprendi* nor *Alleyne*
hold that any fact that influences judicial discretion must be found by a
jury. *Alleyne*, 133 S. Ct. at 2163. As set forth above, these holdings
require facts relevant to sentencing to be submitted to a jury only if they
affect whether a defendant must be sentenced to a statutorily-mandated
sentence. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014);
*see also United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014)
(collecting cases and noting that at least four post-Alleyne unanimous
panels of the Sixth Circuit have "taken for granted that the rule of
Alleyne applies only to mandatory minimum sentences"); *Saccoccia v.
Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But Alleyne held only that
'facts that increase a mandatory statutory minimum [are] part of the
substantive offense.'...It said nothing about guidelines sentencing
factors....").

The Michigan Supreme Court recently held that Michigan's
Sentencing Guidelines scheme violates the Sixth Amendment right to a
jury trial pursuant to *Alleyne*. *People v. Lockridge*, 498 Mich. 358 (2015).
However, Petitioner cannot rely on *Lockridge* to obtain relief with this
Court. "The AEDPA prohibits use of lower court decisions in determining

whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law." *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). In other words, "*Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 1:16-CV-206, 2016 WL 1068744, at *5 (W.D. Mich. Mar. 18, 2016). Further, because the Sixth Circuit has ruled that *Alleyne* does not apply to sentencing guidelines factors, reasonable jurists could disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines, and "*Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme." *Id.* at *6; *see also Perez v. Rivard*, No. 2:14-CV-12326, 2015 WL 3620426, at *12 (E.D. Mich. June 9, 2015). Thus, whether *Alleyne* applies to Michigan's sentencing guidelines is not clearly established, and Petitioner is not entitled to relief on this ground.

Petitioner next argues the trial court erred in calculating his sentencing guidelines range. Because the federal constitutional claim is meritless, Petitioner's claim of error in scoring is a claim founded on state law. Errors in the application of state sentencing guidelines are not sufficient to independently support habeas relief. *Kissner v. Palmer*, 826

F.3d 898, 904 (6th Cir. 2016); *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As such, Petitioner's challenge to the trial court's application of the Michigan sentencing guidelines is not cognizable on federal habeas review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Accordingly, Petitioner's claim is dismissed.

## IV. Conclusion

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial after a district court has rejected a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated in this opinion, Petitioner has failed to make a substantial showing of the denial of his constitutional rights, and the Court will therefore deny Petitioner a certificate of appealability.

The Court further concludes that Petitioner will not be granted leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V.    Order

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. (Dkt. 7.)

The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: June 29, 2017                          s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                                          United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 29, 2017.

s/Shawna Burns
SHAWNA BURNS
Case Manager